UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14050-CIV-ROSENBERG/HOPKINS

BARBARA B. STONE,

        Plaintiff,

vs.

MARGOT STONE BOWEN and MARK BOWEN,
Individually and as Co-Trustees of the
David M. Stone Trust dated February 14, 1996, as amended,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL (DE 24)

**THIS CAUSE** is before this Court upon the District Court's Order Referring Defendant's Motion to Disqualify Counsel, (DE 24), for appropriate disposition. (DE 44). Plaintiff filed a Response, (DE 33), and Defendant filed a Reply, (DE 34). This Court held an evidentiary hearing on Defendants' Motion on June 28, 2017. (DE 49). This matter is ripe for this Court's review. For the reasons that follow, Defendants' Motion to Disqualify (DE 24) is **GRANTED**.

## BACKGROUND

This action was filed by Plaintiff Barbara Stone ("Ms. Stone"), the widow of David Stone ("Mr. Stone"), against the co-trustees of the David M. Stone Trust ("the Trust"), Margot Bowen and her husband, Mark Bowen ("Co-Trustees"). (DE 1-4 at 1)[1]. Although Plaintiff filed this action in the Nineteenth Judicial Circuit of Florida, Defendants removed to federal court, alleging diversity jurisdiction. (DE 1).[2] Defendants seek the disqualification of Plaintiff's counsel, the firm of Gould Cooksey Fennell, P.A. ("Gould Cooksey"), alleging that the firm has a conflict of interest due to its earlier representation of Mr. Stone. (DE 24 at 1). There is no

---

[1] The page numbers refer to those designated in the document header, found at the top right of each page.
[2] The Court subsequently denied Plaintiff's Motion to Remand. (DE 43).

material disagreement on the relevant underlying facts. (DE 33 at 2).

## FINDINGS OF FACT

Before their 2001 marriage, Ms. and Mr. Stone executed an Antenuptial Agreement ("Antenuptial"). (DE 1-4 at 2); (DE 1-2 at 17-35). During the negotiation of the Antenuptial, Ms. and Mr. Stone were represented by separate legal counsel: Todd Fennell ("Mr. Fennell"), of Gould Cooksey, for Ms. Stone and Robert Lewis ("Mr. Lewis"), of Schuyler, Roche, & Zwirner, P.C., for Mr. Stone. (DE 24 at 4); (DE 33 at 3). Mr. Lewis later joined the firm of Chapman and Cutler LLP ("Chapman Cutler"). (DE 33 at 3). The Antenuptial dictated that in the event Ms. Stone survived Mr. Stone by at least thirty days, Mr. Stone would create a trust effective the date of his death. (DE 1-2 at 24). The Antenuptial further listed the benefits to be provided to Ms. Stone by "Barbara's Trust."[3] (DE 1-2 at 24-30). The relevant portions of the Antenuptial were incorporated into the Trust (DE 1-4 at 4) (DE 33 at 4).

The dispute in this case centers on the provision instructing the trustee to pay Ms. Stone the greater of: (1) the net income of the Marital Trust; or (2) a percentage of the value of the principal of the Marital Trust, "excluding the principal residence and golf membership associated with the principal residence." (DE 1-2 at 25). The Antenuptial further states that, in the event Ms. Stone instructs the trustee to sell the principal residence, any sale proceeds not invested in another residential property "shall be administered as an asset of Barbara's Trust." (DE 1-2 at 28). The parties disagree over what it means to administer those sale proceeds as an asset of the trust. Specifically, the parties disagree over whether those proceeds should be included in the value of the principal of the Marital Trust for purposes of determining Ms. Stone's distribution. Plaintiff asserts that those proceeds should be included while Defendant Co-Trustees argue that

---

[3] The Antenuptial refers to "Barbara's Trust," which is the same as the Marital Trust established under the David M. Stone Trust and at the center of the dispute in this case. (DE 33 at 3).

those funds should be excluded. (DE 1-4 at 7); (DE 7 at 2-3). This disagreement came to light after Ms. Stone directed the sale of the principal residence and did not instruct that the sale proceeds be re-invested in another residential property. (DE 1-4 at 7). The property sold on January 17, 2017. (DE 24 at 7).

The Trust and all relevant amendments were drafted by Chapman Cutler. (DE 24 at 4, 7, 11); (DE 33 at 3 n.2, 4). Indeed, Defendants acknowledge that Chapman Cutler acted as Mr. Stone's estate planning counsel for most of his life. (DE 24 at 3). However, both parties agree that for approximately eight months in 2011, Gould Cooksey, and specifically Mr. Fennell, acted as Mr. Stone's estate planning counsel. (DE 24 at 5); (DE 33-1 at 3-4). Mr. Stone initially utilized Gould Cooksey alongside Chapman Cutler. However, in June of 2011, Mr. Stone informed Chapman Cutler that Gould Cooksey would take over as Mr. Stone's estate planning counsel. (DE 26-1 at 2) (Letter from Mr. Lewis of Chapman Cutler to Mr. Fennell of Gould Cooksey, dated June 20, 2011, stating that it was Mr. Lewis' "understanding that you will now represent Dave in connection with his estate planning, and we will no longer have any responsibility in that regard"; indicating that Mr. Stone's "original estate planning documents" were enclosed). Mr. Fennell and Gould Cooksey represented Mr. Stone in that capacity until October of 2011. (DE 33-1 at 4). Around that time, Mr. Stone returned to Chapman Cutler for his estate planning. (DE 24 at 7). Chapman Cutler made further amendments to the Trust before Mr. Stone's death, which adjusted the percentage due to Ms. Stone but did not otherwise change the substance of the provisions at issue. (DE 33 at 4).

## ANALYSIS

Defendants argue that this representation of Mr. Stone is disqualifying, as Gould Cooksey "rendered legal advice to [Mr. Stone] on the exact matters at issue in this litigation" and is now

acting adverse to Mr. Stone's interests by suing the Defendants in their capacity as Co-Trustees. (DE 24 at 1-2). Although Plaintiff acknowledges that Mr. Stone is a former client, Plaintiff strenuously disputes that disqualification is warranted, arguing that: (1) Gould Cooksey is not materially adverse to the interests of Mr. Stone; (2) this litigation is not substantially related to Gould Cooksey's past representation of Mr. Stone; and (3) any conflict has been waived, either through Mr. Stone's informed consent or because Defendants failed to timely object to Gould Cooksey's representation of Plaintiff. (DE 33).

## MERITS

"Motions to disqualify are governed by two sources of authority," the "local rules of the court in which they appear" and "federal common law." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). "If a district court bases its disqualification order on an allegation of an ethical violation," the court "must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* Attorneys in the Southern District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar. *See* S.D. Fla. Local Rule 11.1(c). Here, the relevant ethical rule is Rule 4-1.9 (Conflict of Interest; Former Client) which prohibits a "lawyer who has <u>formerly represented a client</u> in a matter" from later "represent[ing] another person in the <u>same or a substantially related matter</u> in which that person's interests are <u>materially adverse</u> to the interests of the former client unless the former client gives <u>informed consent</u>." R. Regulating Fla. Bar 4-1.9 (a) (emphasis added). The rule also prohibits the "use [of] information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known." R. Regulating Fla. Bar 4-1.9 (b).

The party moving to disqualify former counsel on the basis of a conflict of interest bears the burden of proving the grounds for disqualification. *See Duncan v. Merrill Lynch, Pierce, Fenner, & Smith*, 646 F.2d 1020, 1028 (5th Cir. June 1, 1981).[4] In order to succeed on a motion for disqualification on the basis of a conflict of interest, the party seeking disqualification must first show "the existence of a prior attorney/client relationship." *See Fenik v. One Water Place*, No. 3:06CV514/RV/EMT, 2007 WL 527997, at *4 (N.D. Fla. Feb. 14, 2007). "[O]nce the attorney-client relationship is established, there is an irrebuttable presumption the members of the firm have obtained confidential knowledge from the relationship." *Matter of Outdoor Prod. Corp.*, 183 B.R. 645, 648–49 (Bankr. M.D. Fla. 1995). Second, the movant must show that "the matter in which the law firm [is] subsequently represent[ing] the interest adverse to the former client [i]s the same or substantially related to the matter in which it represented the former client." *United States Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, No. 12-81311-CV, 2013 WL 12082739, at *4 (S.D. Fla. Sept. 6, 2013).

Attorney Client Relationship

Plaintiff concedes that Mr. Fennell and Gould Cooksey had an attorney client relationship with Mr. Stone. (DE 33 at 11). Mr. Stone was the Trustee of the Trust during his life, including during the period where he was a Gould Cooksey client. (DE 24 at 15 n. 9). Gould Cooksey does not assert that its representation was limited in scope so that the firm did not represent Mr. Stone in his capacity as Trustee. In this case, Plaintiff has sued Defendants not only individually, but also *as Co-Trustees of the David M. Stone Trust*. (DE 1). "[W]hen a grantor who is also a trustee is an attorney's former client, a successor trustee is also a former client." *See* Daniel Ebner, *Does the Duty to Not Act Materially Adverse to the Interests of a Former Trusts & Estates Client in a*

---

[4] All decisions of the former Fifth Circuit handed down before September 30, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

*Substantially Related Matter Survive the Client's Death?*, ABA Section of Real Property & Estate Law eReport (June 2011), available at https://www.americanbar.org/content/dam/aba/publications/rpte_ereport/2011/2011_aba_rpte_ereport_03_te_ebner.authcheckdam.pdf. Thus, Defendant Co-Trustees stand in the shoes of Mr. Stone as Gould Cooksey's former client.

Material Adversity

Gould Cooksey acknowledges that it is acting adverse to Defendants, but asserts that this does not equal acting adverse to Mr. Stone's interests. (DE 33 at 12). Having established that Defendant Co-Trustees stand in the shoes of Mr. Stone as former client, it is clear that Gould Cooksey is acting adverse to Mr. Stone's interests in bring this action against Defendants. Despite arguing strenuously to the contrary, Plaintiff cites no authority that supports a different conclusion.[5]

Substantial Relatedness

"Matters are 'substantially related' . . . if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." R. Regulating Fla. Bar 4-1.9 comment. "'[W]hether the two matters are substantially related depends upon the specific facts of each particular situation or transaction.'" *In re Weinhold*, 380 B.R. 848, 853 (Bankr. M.D. Fla. 2007) (quoting *The Florida Bar v. Dunagan,* 731 So.2d 1237, 1240 (Fla.1999)). Where "two matters involve the same facts," they are generally considered to be substantially related. *See U.S. ex rel. Bumbury v. Med-Care*

---

[5] In both cases cited by Plaintiff, the attorney was acting on behalf of the interests of the former client. *See Jacuzzi v. Jacuzzi Bros.*, 218 Cal. App. 2d 24, 29 (Ct. App. 1963) (former attorney for corporation did not have a conflict in later representing shareholders in bringing derivative suit against corporation; derivative action was for the benefit of the corporation and shareholders were in effect acting as trustees for the corporation); *In re Int'l Tech. Prod. Corp.*, 58 B.R. 33, 34 (Bankr. S.D. Fla. 1986) (attorney was not disqualified from serving as special counsel representing the estate of the debtor before a claims tribunal where attorney was previously general counsel for debtor and, in that role, opposed creditors' claims; attorney's "sole function in [ ] employment [as special counsel] was to obtain the maximum permissible recovery for this debtor from a third party").

*Diabetic & Med. Supplies, Inc.*, 101 F. Supp. 3d 1268, 1275 (S.D. Fla.), *aff'd*, 101 F. Supp. 3d 1280 (S.D. Fla. 2015). *Cf. Morgan Stanley & Co. v. Solomon*, No. 08-81330-CIV, 2009 WL 413519, at *3 (S.D. Fla. Feb. 19, 2009) (declining to disqualify counsel where, although the "claims [we]re the same type," the "facts . . . d[id] not demonstrate that the cases [we]re substantially related"). A review of the evidence reveals that the matters are not only of the same type, but share the same facts.

Despite the fact that Gould Cooksey admits to acting as Mr. Stone's sole estate planning counsel for a period of several months, the firm asserts that "the nature and extent of Mr. Fennell's past representation of Mr. Stone can best be summarized as tax planning designed to lessen the burden of estate taxes at his death." (DE 33 at 14). However, the records provided from Mr. Stone's file belie this characterization. An invoice from Gould Cooksey for hours billed between February 1 and August 31 of 2011 reveals that Gould Cooksey spent nearly 70 hours[6] on Mr. Stone's file and billed for tasks that included the preparation of a "family daughter gift trust," (DE 25-2 at 4), a "summary of trusts and status," (DE 25-2 at 4), and "Estate Charts and Financial Charts," (DE 25-2 at 5). Gould Cooksey also prepared a spiral bound booklet titled "David. M. Stone Estate Planning Projections," dated August 2011. (DE 25-3 at 2). The booklet addresses topics such as the "Total to Heirs," "Estimated Distribution Summary," and "Projected Estate Tax Liability," as reflected in the table of contents. (DE 25-3 at 3-9).

A review of this and other evidence submitted to this Court makes clear that Mr. Fennell completed a thorough review of Mr. Stone's estate plan and engaged in several analyses of the distribution of Mr. Stone's assets through the Trust. These analyses specifically evaluated the Marital Trust at issue. For example, the Estimated Distribution Summary projects a total distribution of nine million dollars to the Marital Trust, including five million dollars from the

---

[6] This number is likely even greater, as the invoice provided is missing page 4 of 5. (DE 25-2).

principal residence. (DE 25-3 at 7).

These records also show that Mr. Fennell evaluated the interplay between the Trust and the Antenuptial. A February 11, 2011 memorandum recounts a discussion between Mr. Fennell and Mr. Stone regarding the propriety of placing the principal residence in a Qualified Personal Residence Trust (QPRT). One of the factors addressed was whether doing so would comply with the Antenuptial. (DE 25-6 at 2). Plaintiff's assertion that Mr. Fennell's representation of Mr. Stone did not concern the "*interpretation* of the Antenuptial Agreement and Trust," (DE 33 at 7), cannot be credited in light of the substantial evidence to the contrary. Instead, it is clear that Gould Cooksey provided legal advice to Mr. Stone, as Trustee of the Trust, on the issue at the heart of this case: how the estate plan would function to provide Ms. Stone with distributions from the martial trust and what the expected amount of those distributions would be. The matters are, at the very least, substantially related. *See U.S. ex rel. Bumbury,* 101 F. Supp. 3d at 1276–77 (matters were substantially related where lawyer advised former client regarding regulations and then brought case alleging that former client was in violation of those regulations). *Cf. Brown v. Blue Cross & Blue Shield of Florida, Inc.*, No. 11-80390-CIV, 2011 WL 11532078, at *5 (S.D. Fla. Aug. 8, 2011), *aff'd sub nom. Brown v. Blue Cross Blue Shield of Florida, Inc.*, 456 F. App'x 854 (11th Cir. 2012) (matters not substantially related where law firm's previous representation involved reviewing distributor agreements for regulatory compliance and current dispute centered on the contractual validity of a distributor agreement that the law firm had not reviewed).

Informed Consent by Mr. Stone

Plaintiff's assertion that Mr. Stone consented to this conflict by consenting to Mr. Fennell's representation of Plaintiff in the Antenuptial negotiations is without merit. At no time

during Mr. Stone's life did a dispute over this provision come to light. Nor is there any argument that Mr. Stone anticipated this dispute or the fact that the interests of his successor trustees would become adverse to the interests of his wife, a beneficiary of the Trust. Thus, Mr. Stone was unable to provide the informed consent necessary to waive this conflict. *See United States Commodity,* 2013 WL 12082739 at *5 ("'Informed consent' is defined as 'the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.'") (quoting R. Regulating Fla. Bar 4 preamble).

## **WAIVER**

"A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) (quotation omitted). "[F]ailure to make a timely objection may [ ] result in a waiver." *Id.*

Both parties acknowledge that as of June of 2016, Mr. Fennell, on behalf of Ms. Stone, had objected to the Co-Trustees' view that the proceeds of the sale of the principal residence are excluded from the value of the principal of the trust. (DE 34 at 9) (Defendants' Reply, stating that Mr. Fennell first raised an objection on June 13, 2016); (DE 33 at 18-19) (Plaintiff's Response, stating disagreement arose as early as May 25, 2016). Defendants further acknowledge that they first raised the issue of conflict with Gould Cooksey on January 26, 2017 – approximately two weeks after Plaintiff filed her Complaint. (DE 35 at 3).

Although Defendants should have raised the issue earlier, *see Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 721, 723 (D. Md. 2004) (rejecting argument that party was not required to raise disqualification issue until after complaint was filed; ultimately concluding that

motion was "both lacking in merit and [ ] untimely"), there is no evidence that Defendants delayed in filing the Motion for tactical reasons, *see In re Jet 1 Ctr., Inc.*, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004) ("In particular, consideration should be given and inquiry be made as to whether disqualification was delayed for tactical reasons.").

Defendants raised the issue immediately after the case was filed and brought the Motion within a reasonable period of time thereafter, while discovery was still ongoing. *See, Kobarid Holding, S.A. v. Reizen*, 2005 WL 1694069, *7 (S.D. Fla. July 19, 2005) (affirming Magistrate Judge's order, which found that a seven-month delay in filing the motion to disqualify did not constitute a waiver "when very little progress had been made in th[e] action"). *Cf.* SE Prop. Holdings, LLC v. Phillips, No. 3:15-cv-00554-MCR-EMT, 2016 U.S. Dist. LEXIS 147726, at *11-16 (N.D. Fla. May 24, 2016) (finding waiver in case where defendant filed motion to disqualify three weeks after complaint was filed, but consideration of defendant's involvement in previous related case revealed that "the delay [was] a much more substantial three years"); *Chem. Waste Mgmt., Inc. v. Sims*, 875 F. Supp. 501, 505 (N.D. Ill. 1995) (finding waiver where there was "twenty-one month delay in objecting to the conflict" and nine of those months were after the complaint was filed). Moreover, Gould Cooksey complains of Defendants' failure to identify this conflict despite the fact that Gould Cooksey failed to uphold its own responsibility to do so. *See* R. Regulating Fla. Bar 4-1.7 comment ("resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation;" if an impermissible conflict of interest "arises after representation has been undertaken, the lawyer should withdraw from the representation").

## **REMEDY**

"It is well-settled that disqualification is not mandatory even after a finding that a law firm has violated a conflict of interest rule." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, 2008 WL 1994857, *1 (S.D. Fla. May 6, 2008). Instead, "[d]isqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly." *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010) (citing *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n. 4 (11th Cir.1982)). In weighing whether disqualification is appropriate, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976). In determining whether to disqualify counsel, courts weigh factors such as "the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment." *Great Am.*, 2008 WL 1994857 at *2.

That Gould Cooksey has found itself representing a client with interests adverse to its former client is no insignificant violation. Because the subject matters of the present and prior representation are substantially related, this Court "irrebutably presume[s] that relevant confidential information was disclosed during the former period of representation." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir.1981)).[7] Plaintiff's access to confidential

---

[7] Although *Freund* was a criminal case, it relied on a civil case, *Duncan*, for this presumption. And although *Freund* analyzed the impact of a conflict from the perspective of post-conviction proceedings, as opposed to pretrial proceedings regarding disqualification, the Court recognized that "the rationale behind the rule applies to both types of proceedings." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999).

information relevant to the issues at the heart of this case is certainly prejudicial to Defendants. And while Plaintiff will be prejudiced by being deprived of her counsel of choice, Plaintiff has presented no evidence that she will have trouble finding qualified counsel to take over this case. The fact that this case is in its infancy lessens this burden. *See Arrowpac Inc. v. Sea Star Line, LLC*, No. 3:12-CV-1180-J-32JBT, 2013 WL 5460027, at *12 (M.D. Fla. Apr. 30, 2013) (prejudice to party required to seek new counsel following disqualification was minimal where cases were in their infancy).

As previously determined, Defense counsel did not bring this Motion for tactical reasons, but instead to protect the interests of its clients. Conversely, Gould Cooksey has failed to protect the interests of its former client by neglecting to conduct any meaningful conflict check before accepting representation of Plaintiff in this case. Further, despite the significant evidence to the contrary, Gould Cooksey continues to refuse to acknowledge even the possibility of a conflict. This "serves to perpetuate the perception that lawyers elevate their self-interests above those of their clients." *U.S. ex rel. Bumbury*, 101 F. Supp. 3d 1268 at 1279. On balance, these factors weigh in favor of disqualification.

## CONCLUSION

Based on the foregoing, it is **HEREBY ORDERED AND ADJUDGED** that Defendants' Motion to Disqualify (DE 24) be **GRANTED**, and Plaintiff's counsel, Gould Cooksey Fennell, P.A., is disqualified from representing the Plaintiff in this matter.

**DONE AND ORDERED** in chambers this 14th day of July, 2017, at West Palm Beach in the Southern District of Florida.

JAMES M. HOPKINS,
UNITED STATES MAGISTRATE JUDGE